UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-60020-CR-DIMITROULEAS/SNOW

UNITED STATES OF AMERICA

vs.

JONATHAN MARKOVICH,
RICHARD WASERSTEIN,
DANIEL MARKOVICH,
CHRISTOPHER GARNTO,
JOSE SANTEIRO,
DREW LIEBERMAN,
MARIO KUSTURA, and
FRANK BOSCH, JR.,

        Defendants.
_____/

## RICHARD WASERSTEIN'S MOTION TO SEVER DEFENDANTS

Richard Waserstein, through counsel, and pursuant to Fed. R. Crim. P. 14, the Due Process Clause of the Fifth Amendment, the Compulsory Process Clause of the Sixth Amendment, and *Byrd v. Wainwright*, 428 F.2d 1017 (5th Cir. 1970), respectfully moves this Court to sever his trial from the trial of the other Defendants.

This severance is necessitated by the fact that at least two of the other Defendants are essential defense witnesses for Mr. Waserstein. Jonathan Markovich and Daniel Markovich, both of whom are brothers-in-law to Mr. Waserstein, possess information critical to Mr. Waserstein's defense, and may be available to testify if Mr. Waserstein is tried separately, but will likely not be available to testify at a joint trial because they would likely invoke their right to silence under the 5th Amendment.

When this situation arises, especially in cases like this one involving close family members, severances are frequently granted. *See, e.g.,* Kerri and Brian Kaley, 07-cr-80021-Gayles, Docs. 468 and 469 (severing defendants so that one spouse could testify at second trial of other spouse); Charles and Tamar Nissenbaum, 16-cr-20333-Cooke, Doc. 71 (granting the motion to sever defendants so that husband could testify at wife's trial).

Finally, this case also involves 8 defendants. A joint trial with 8 defendants will present logistic difficulties even after the worst of the virus passes and jury trials resume. Accordingly, granting the motion to sever presents the added bonus of helping to solve this logistic issue.

## BACKGROUND AND STATEMENT OF FACTS

On January 19, 2021, the Government filed a 35-count Indictment charging various health care, kickback, and money laundering charges related to the operation of substance abuse treatment facilities. Of the 8 defendants, seven were charged in the health care and/or kickback counts, but Richard Waserstein was charged only with conspiracy to commit money laundering and money laundering (Counts 24-27 and 29-32). He was not charged in connection with any underlying criminal activity.

And for good reason. Although Mr. Waserstein was a co-owner of the companies that operated the treatment facilities, he did not participate in the day-to-day operation of the facilities, did not spend time at the facilities, and took no part in the alleged actions giving rise to the Government's health care and kickback charges. His responsibilities were limited to investing – that was it. In the operating agreement, Mr.

Waserstein's only duty or obligation to the partnership was to invest money, which he did as a silent partner.

Despite Mr. Waserstein's lack of involvement in any of the 23 counts of alleged healthcare fraud or payment of kickbacks or 2 counts of bank fraud, the Government seeks to try him in a joint trial with the other Defendants. Because his primary witnesses are his co-Defendants, this trial structure will cause Mr. Waserstein substantial prejudice, as set forth below.

## ARGUMENT AND MEMORANDUM OF LAW

Richard Waserstein's trial should be severed from that of the other Defendants, in particular Jonathan and Daniel Markovich (the "Markovichs"). Mr. Waserstein's defense in this case is that he had little to no personal knowledge of the day to day operations of the business, and no knowledge of any underlying criminal activity. Without knowledge or participation in a specified unlawful activity, it is impossible as a matter of law to find him guilty of money laundering. *See* 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1957(a).

The strongest exculpatory evidence to demonstrate Mr. Waserstein's innocence is the testimony of the Markovichs, who have firsthand knowledge that Mr. Waserstein simply was not involved in the matters giving rise to the health care fraud, kickback charges, and bank fraud. They have indicated their willingness to offer this testimony if Mr. Waserstein is tried separately after their trial, but will likely exercise their Fifth Amendment against self-incrimination in a joint trial. In other words, should this matter proceed to a joint trial as scheduled, Mr. Waserstein will have no avenue by

which to compel the exculpatory, albeit protected, testimony of the Markovichs. Without the benefit of this testimony, Mr. Waserstein will be deprived of the rights guaranteed to him by the Fifth and Sixth Amendments to the Constitution (including the right to due process of law, to a fair trial, and to compel witnesses to testify in his defense).

### A.   GENERAL PRINCIPLES

The right to present relevant evidence is "a fundamental element of due process of law." *Taylor v. Illinois*, 484 U.S. 400, 409 (1988) (quoting *Washington v. Texas*, 388 U.S. 14, 19 (1967)). The essential right secured to a criminal defendant by the due process clause is "the right to a fair opportunity to defend against the [prosecution's] accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294 (1973); *see also United States v. Cohen*, 888 F.2d 770, 777 (11th Cir. 1989) ("The trial court's discretion does not extend to exclusion of crucial relevant evidence."). Of all the ways that the accused might defend against such accusations, "[f]ew rights are more fundamental than that of an accused to present witnesses in his own defense." *Chambers*, 410 U.S. at 302. In both *Chambers* and *Taylor*, the Supreme Court found it to be a fundamental breach of due process and of the right to a fair trial for the trial court to preclude the defendant, based on procedural or evidentiary rules, from calling his witnesses to the stand.

The primary constitutional guarantor of the criminal defendant's right to secure the attendance of witnesses at trial is the Sixth Amendment right of compulsory process.

> The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense,

the right to present the defendant's version of the facts as well as the prosecution's to the jury so it may decide where the truth lies. **Just as an accused has the right to confront the prosecution's witnesses for the purpose of challenging their testimony, he has the right to present his own witnesses to establish a defense.** This right is a fundamental element of due process of law.

*Washington*, 388 U.S. at 19 (emphasis added); *see also United States v. Nixon*, 418 U.S. 683, 709 (1974) ("To ensure that justice is done, it is imperative to the function of courts that compulsory process be available for the production of evidence needed either by the prosecution or by the defense."). In *Washington*, the Supreme Court struck down a state law that prevented the defendant from calling a witness, who was otherwise willing to appear and to testify, simply because that witness also had been charged with the same crime. *Id* at 23.

To ensure that joinder of defendants under Fed. R. Crim. P. 8(b) does not prevent defendants from presenting relevant exculpatory testimony, the Eleventh Circuit has fashioned an analysis to determine if the defendant seeking testimony from a co-defendant is entitled to a severance under Fed. R. Crim. P. 14. This Rule provides:

> If it appears that a defendant or the government is prejudiced by a joinder of offenses or of defendants in an indictment or information or by such joinder for trial together, the court may... grant a severance of defendants or provide whatever other relief justice requires.

In what the Eleventh Circuit has since described as "the seminal case on this issue," *see United States v. DiBernardo*, 880 F.2d 1216, 1226 (11th Cir. 1989), the former Fifth Circuit set forth the standard for addressing a defendant's right to a severance based on the need for a co-defendant's exculpatory testimony. *Byrd*, 428 F.2d at 1019-20. In *Byrd*, a defendant in a state court rape case had sought a severance from

his co-defendants in order to produce their testimony that he had not been involved in the rape. *Id.* at 1018. The state court denied this motion, and the defendant was convicted. *Id.* The district court granted the defendant's habeas corpus petition, finding that the denial of the severance motion violated due process. *Id.* The Fifth Circuit affirmed. *Byrd*, 428 F.2d at 1019-20 (footnotes omitted); *accord Tifford v. Wainwright*, 588 F.2d 954, 956-57 (5th Cir. 1979).

In fashioning this analysis, the *Byrd* court relied in large measure on the Seventh Circuit's decision in *United States v. Echeles*, 352 F.2d 892 (7th Cir. 1965). In that case, the court held that the right to a fair trial "necessitated providing [the defendant] the *opportunity* of getting the [exculpatory] evidence before the jury, regardless of how we might regard the credibility of that witness or the weight of his testimony." *Echeles*, 352 F.2d at 898 (emphasis in original).

Following *Byrd*, courts employ a two-part test, each part directing the trial court to weigh four factors. The first part of the test determines if the defendant will be prejudiced if denied the co-defendant's proffered testimony. To satisfy this portion of the test, the defendant must demonstrate:

> (1) a bona fide need for the co-defendant's testimony; (2) the substance of the desired testimony; (3) the exculpatory nature and effect of the desired testimony; and (4) that the co-defendant will in fact testify at a separate trial.

*See United States v. Cobb*, 185 F.3d 1193, 1197 (11th Cir. 1999); *accord United States v. Browne*, 505 F.3d 1229, 1269 (11th Cir. 2007); *DiBernardo*, 880 F.2d at 1228; *United States v. Machado*, 804 F.2d 1537, 1544 (11th Cir. 1986).

Once the defendant has satisfied the first part of this test, the court is to

determine the propriety of severance by weighing four additional factors:

> (1) the significance of the testimony in relation to the defendant's theory of the case, (2) the extent of the prejudice caused by the absence of the testimony, (3) the effect of severance on judicial economy and the administration of justice, and (4) the timeliness of the motion.

Cobb, 185 F.3d at 1197; *accord Browne*, 505 F.3d at 1269; *DiBernardo*, 880 F.2d at 1228; *Machado*, 804 F.2d at 1544.

### B. THE *BYRD* TEST COMPELS SEVERING RICHARD WASERSTEIN'S TRIAL FROM THAT OF HIS CO-DEFENDANTS.

Both parts of the *Byrd* analysis are easily satisfied in this case, given that the Markovichs' testimony is critical to Mr. Waserstein's defense and can only be obtained if he is tried separately.

#### 1. The Importance of the Markovichs' Testimony: The First Four Factors

##### a. Factors one through Three:

**The Bona Fide Need for, Substance of, and Exculpatory Nature and Effect of the Testimony**.

"[T]he issue of the [witness's] knowledge of [the defendant's alleged] criminal activities [is] central to the crimes charged by the indictment, and . . . essential to rebut the prosecution's proof on this crucial issue." *Tifford*, 588 at 957.

Richard Waserstein's defense turns in large part on his minimal involvement in the companies in which he invested–proof of which can be provided through the testimony of Jonathan and Daniel Markovich. As the Indictment makes clear, all of the charges against Mr. Waserstein require the Government to prove not only that he engaged in a financial transaction involving the proceeds of specified unlawful activity,

but that he did so "*knowing* that the property involved in the financial transaction represented the proceeds of some form of unlawful activity, and *knowing* that the transaction was designed in whole and in part to conceal and disguise the nature, the location, the couce, and the control of the proceeds of specified unlawful activity." *See* Indictment at 33-34; 35-37.

To the extent there was underlying specified unlawful activity by other Defendants in the form of health care fraud or paying and receiving kickbacks, Waserstein had no knowledge of this activity. The best, and perhaps the only, way he can establish this defense is through the testimony of the Markovichs. It is this testimony that will establish that Mr. Waserstein was only involved in the financial aspects of the business and had no role in or knowledge of the day-to-day operations of the business.

Thus this case easily satisfies the first three factors of the first *Byrd* inquiry.

### b. The Likelihood that the Markovichs Will Testify in a Separate Trial

As to the fourth factor, the Markovichs will testify for Mr. Waserstein if he is tried in a later, separate trial. In *Byrd*, the former Fifth Circuit indicated that severance may be denied where the likelihood that the defendant would testify is no more than "a gleam of possibility in the defendant's eye." 428 F.2d at 1022; *cf. United States v. Shuford*, 454 F.2d 772, 778 (4th Cir. 1971) (defendant must establish a reasonable probability that the co-defendant would testify). That is unquestionably not the case here. Here there is abundantly more than a "gleam". In fact, the Markovichs, through counsel, have advised that, although they may decline to testify at their own

or a joint trial, they will testify at a later, separate trial for Waserstein.

These are not ordinary co-defendants; they are close family members. Mr. Waserstein has been married to Jonathan and Daniel's sister for 12 years; and have been close since the two began dating in 2003–18 years and counting. Two children were born of the relationship. As to the tight-knit nature of the Waserstein-Markovich family, Jonathan and Daniel Markovich live two blocks away from Mr. Waserstein and his wife. The families spend 90% (or more) of Sabbat dinners together, and all Jewish holidays together. Suffice to say, the families are almost inseparable. Given the relationship, the Markovichs' expression of willingness to testify is reliable and a sufficient basis to support severance.

### 2. Why Severance is Appropriate: The Second Four Factors

The appropriateness of severance in this case is demonstrated by the significance of the Markovichs' anticipated testimony, the extent to which the defense will be prejudiced if his testimony is lost, the timeliness of this motion, and the minimal adverse impact a severance would have on the interests of the judicial economy.

### a. The Significance of the Markovichs' Testimony to the Theory of Defense

As explained above, the Government's theory is that Richard Waserstein knowingly participated and engaged in a conspiracy to commit money laundering with Jonathan Markovich and that he laundered money derived from the criminal actions of one or more Defendants. The Markovichs' testimony would directly contradict the Government's theory and explain how Richard Waserstein was kept in the dark as to

the business activities of the treatment centers. The testimony is "peculiarly within the knowledge" of the Markovichs and is particularly significant to the theory of defense. *See DiBernardo*, 880 F.2d at 1228.

Where, as here, the Markovichs "[were] the only person[s] involved in certain aspects of the activities charged as criminal, [t]estimony concerning [their] knowledge of the events would provide more convincing evidence than protestations of ignorance by [Richard Waserstein]." *DiBernardo*, 880 F.2d at 1228. "[T]he issue of [the Markovich's] knowledge of [Richard Waserstein's alleged] criminal activities [is] central to the crimes charged by the indictment, and [the Markovich's] testimony [is] essential to rebut the prosecution's proof on this crucial issue." *Tifford*, 588 at 957.

### b. The Extent of Prejudice if Severance is Denied

As the Eleventh Circuit case law makes clear, only a severance can make the Markovichs available as a witness for Richard Waserstein, given his intention to exercise his right to remain silent at a joint trial. So, absent a severance, Richard Waserstein will be deprived of the Markovich's testimony at trial. This will result in extreme prejudice because Markovich's testimony is unquestionably the most significant evidence Richard Waserstein will present in his defense.

Because the Markovichs' testimony will only be available to Mr. Waserstein if a severance is granted, and their testimony will form the cornerstone of his defense, Mr. Waserstein would experience extreme prejudice if a severance is denied.

### c. The Interests of Judicial Economy

In a joint trial on the current Indictment, lengthy and extensive testimony as

to 25 counts on which Waserstein is not charged will take place. By the Government's estimate the trial will take 4 weeks with a number of defendants and their lawyers packed into a small courtroom during the pandemic. It makes practical sense to split up the trial into small pieces.

The testimony and evidence against Mr. Waserstein amounts to a small percentage of the Government's case. Thus, although some effort and expense to the Court and Government may result from a severance, where a severance motion is timely filed and the need for the co-defendant's testimony is compelling, the interests of judicial economy are less consequential. (This is especially true because of the pandemic where it does not make sense to have a joint trial with a large group of defendants). As the Eleventh Circuit has observed, "a motion to sever based on the need for exculpatory testimony of a co-defendant implicates the constitutional rights of the movant." *DiBernardo*, 880 F.2d at 1226. And considerations of judicial economy, although relevant, "cannot be elevated to the point where they impair a defendant's rights under the Constitution[.]" *United States v. Pepe*, 747 F.2d 632, 651 (11th Cir. 1984); *DiBernardo*, 880 F.2d at 1228 ("[T]he teaching of *Byrd v. Wainwright* and its progeny is that judicial economy must yield to a defendant's right to a fair trial.").

### d. The Timeliness of this Motion

The Indictment in this case was just issued last month and the case is in its beginning phase. Thus, the timeliness of this motion weighs in favor of granting a severance.

### 3. The Procedure for Presenting the Proffer of the Markovichs' Testimony

A trial court has broad discretion to determine the method by which it will consider the proposed exculpatory testimony of a co-defendant. The proffer from counsel contained herein is sufficient. *See United States v. Martinez*, 486 F.2d 15, 22 (5th Cir. 1973) (trial court accepted oral proffer of defense counsel); *United States v. Shuford*, 454 F.2d 772, 775 n.1 (4th Cir. 1971) (trial court accepted oral proffer from counsel for the defendant seeking a severance); *see also Taylor v. Singletary*, 122 F.3d 1390, 1393 (11th Cir. 1997). An affidavit is not required. *See, e.g., DiBernardo*, 880 F.2d at 1219 (trial court examined co-defendant personally); *Pepe*, 747 F.2d at 650 (trial court held evidentiary hearing); *United States v. Dennis*, 645 F.2d 517, 521 (5th Cir. Unit B 1981) (co-defendant allowed to proffer testimony in chambers), *overruled on other grds. by United States v. Lane*, 474 U.S. 438 (1986); *United States v. Vigil*, 561 F.2d 1316, 1317 (9th Cir. 1977) (counsel submitted affidavit describing proffered testimony).

This motion was reviewed and approved by the Markovichs and their counsel. This is sufficient to satisfy Richard Waserstein's burden of establishing the substance of their anticipated testimony at a severed trial.

### 4. The Sequencing of the Severed Trials

Once a court is satisfied that a severance is required, the court must then decide the order of the trials. Although "there is no absolute right to be tried in a certain order," *DiBernardo*, 880 F.2d at 1229, the court must sequence the trials to further the purpose of the severance. *Id.* Here, the severance is necessary to ensure that Richard

Waserstein may obtain the testimony of his exculpating co-defendants, while accommodating their Fifth Amendment privilege. The Eleventh Circuit in *DiBernardo* made clear that, under these circumstances, Mr. Waserstein's trial must proceed after the Markovichs' trial.

The circumstances here are exactly the scenario that unfolded in *DiBernardo*, where two defendants moved for a severance so that their co-defendant (D'Apice) could exculpate them at a severed trial. The trial judge granted the severance but then, inexplicably, ordered that the movants' trial proceed first, during which the exculpating co-defendant (D'Apice) asserted his Fifth Amendment right to remain silent and refused to testify. Notably, the government had agreed that it would not use the exculpating co-defendant's testimony against him at the later trial and the judge purported to grant the exculpating co-defendant "judicial use immunity" so he could testify at movants' trial. *DiBernardo*, 880 F.2d at 1220. Nevertheless, the exculpating co-defendant refused to testify while his charges remained pending on the ground that the "immunity" provided by the court and the government was not co-extensive with the Fifth Amendment. The trial judge held the exculpating co-defendant in contempt for declining to testify at movants' trial. Ultimately, the movants were deprived of the exculpating testimony of their co-defendant and were convicted.

The exculpating co-defendant (D'Apice) successfully appealed the contempt order to the Eleventh Circuit, which reversed the adjudication of contempt against him, holding that his refusal to testify at movants' severed trial was a valid exercise of his Fifth Amendment privilege, given that the charges against him remained pending.

*United States v. D'Apice*, 664 F.2d 75 (5th Cir. Unit B 1981). The Eleventh Circuit expressly rejected the concept of "judicial use immunity" as a mechanism to protect the Fifth Amendment rights of the exculpating co-defendant.

Given the Eleventh Circuit's decision in *D'Apice*, the trial judge in *DiBernardo* later granted movants a new trial, candidly acknowledging that he had erred by trying the movants first: "The granting of the motion to sever [the exculpating defendant] D'Apice gave [the movants] a partial victory; to then deprive them of D'Apice's testimony by forcing them to trial before D'Apice was relieved of his Fifth Amendment privilege was clearly error." *DiBernardo*, 880 F.2d at 1220. The Eleventh Circuit agreed. Ruling on the government's appeal of the new trial order, the Eleventh Circuit held "it was an abuse of the trial court's discretion to require [the movants] DiBernardo and Rothstein to be tried prior to [the testifying co-defendant] D'Apice without proper protection for the latter's fifth amendment privilege." *DiBernardo*, 880 F.2d at 1229.

Unless the Government grants the Markovich's direct and derivative use immunity under 18 U.S.C. § 6002, they have a Fifth Amendment privilege to remain silent and is unavailable as a witness for Richard Waserstein until his trial is complete. Thus, Richard Waserstein's cannot present the Markovich brothers as witnesses until after all of his charges are resolved by a jury. This is the same procedure that Judge Gayles and Judge Cooke used in recent cases involving close family members. *See United States v. Kerri Kaley & Brian Kaley*, 07-80021-Cr-Gayles (severing defendants to allow for one spouse to testify at second trial of other spouse), *United States v. Yechezkel & Tamar Nissenbaum,* 16-20333-Cr-Cooke.

## CONCLUSION

To accommodate both Richard Waserstein's Sixth Amendment right to obtain the Markovichs' exculpatory testimony and the Markovichs' Fifth Amendment right against self-incrimination, this Court should grant the severance and try Mr. Waserstein separately after the first trial is complete.

## CERTIFICATE OF COMPLIANCE WITH LOCAL RULE 7.1

Pursuant to Local Rule 7.1, we conferred with Government counsel, who oppose the motion.

Respectfully submitted,

**MARKUS/MOSS PLLC**
40 N.W. Third Street
Penthouse One
Miami, Florida 33128
Tel: (305) 379-6667
Fax: (305) 379-6668
markuslaw.com

By: /s/ David Oscar Markus
DAVID OSCAR MARKUS
Florida Bar Number 119318
dmarkus@markuslaw.com

A. MARGOT MOSS
Florida Bar Number 091870
mmoss@markuslaw.com