**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 21-60020-CR-DIMITROULEAS/SNOW**

**UNITED STATES OF AMERICA**

**vs.**

**JONATHAN MARKOVICH,**
**RICHARD WASERSTEIN,**
**DANIEL MARKOVICH,**
**CHRISTOPHER GARNTO,**
**JOSE SANTEIRO,**
**DREW LIEBERMAN,**
**MARIO KUSTURA, and**
**FRANK BOSCH, JR.,**

        **Defendants.**

_____/

## GOVERNMENT'S OPPOSITION TO RICHARD WASERSTEIN'S MOTION TO SEVER DEFENDANTS

The United States of America, through counsel, hereby opposes defendant Richard Waserstein's ("Waserstein") Motion to Sever Defendants [D.E. 149] ("Motion"). Waserstein and his brother-in-law, Jonathan Markovich ("J. Markovich") face multiple money laundering charges stemming from an underlying $112 million health care fraud, wire fraud, and kickback scheme operated out of their addiction treatment facilities, Compass Detox and WAR. J. Markovich is also charged with the underlying health care fraud, wire fraud and kickback conspiracies, as is his brother, Daniel Markovich ("D. Markovich"). Waserstein's Motion should be denied for several reasons, but chiefly because of its fatal flaw in assuming his co-defendants would, in fact, testify. In addition, Waserstein does not establish that the Markovichs' testimony would be necessary to his defense and fails to provide sufficient notice of its substance. Finally, other considerations, including judicial economy and the lack of prejudice, weigh against severance.

1

## PRELIMINARY STATEMENT

Waserstein does not contend he is improperly joined as a defendant in this case under Federal Rule of Criminal Procedure 8(b), nor could he, given that the alleged money laundering stems from the underlying fraud.  Instead, Waserstein argues that his trial should be severed from his co-defendants' trial under Federal Rule of Criminal Procedure 14(a) because he wants the Markovichs' testimony.  Waserstein's arguments fail to overcome the presumption that defendants indicted together should be tried together.  *Zafiro v. United States*, 506 U.S. 534, 537 (1993).

The case Waserstein primarily relies on, *Byrd v. Wainwright*, 428 F.2d 1017 (5th Cir. 1970), captures why severance is inappropriate here.  *Byrd* dealt with a violent crime that occurred on a single day and at a single crime scene.  The only witnesses were the victim and perpetrators. If the moving defendant was not there, he simply could not have committed the crime, and the only people who could prove that were the very people who were going to stand trial with him. Several had even admitted that the moving defendant was not involved, but their statements were suppressed because they were taken in violation of Miranda.  *Id.* at 1018-21.  Waserstein's case presents nothing of the sort.  Waserstein is accused of laundering proceeds of his co-defendants' fraudulent addiction treatment services, crimes which spanned several years, had numerous participants, and to which there were hundreds of witnesses.  Waserstein's suggestion that *Byrd* is in any way analogous to his own situation is simply wrong.

Even if Waserstein could find some parallel to *Byrd* on which to hang his request for severance, Waserstein fails to show, as he must, that the Markovichs are likely to testify at his trial.  Instead, Waserstein's arguments snuff out whatever "gleam of possibility" exists for such testimony.  *See Byrd*, 428 F.2d at 1022.  Ignoring the overwhelming case law denying severance where co-defendant testimony is conditioned on the co-defendant being removed from jeopardy

or the order of the trials, Waserstein simply proffers that his brothers-in-law will <u>only</u> testify <u>if</u> they are tried first.  *See* Mot. at 8.  This is exactly the type of conditional offer that the Eleventh Circuit, and every other circuit in the country, have expressly rejected as the basis for severance.  *See, e.g.*, *United States v. Funt*, 896 F.2d 1288, 1298 (11th Cir. 1990) ("An offer to testify, conditioned upon being effectively removed from jeopardy or upon future evidentiary rulings, does not satisfy the fourth *Machado* threshold prong [pertaining to the likelihood the co-defendant will testify] when the district court concludes that the defendant will not in fact testify.").  Courts routinely reject such conditional offers because the testimony is unlikely to materialize, and such offers encourage "alibi-swapping."  *United States v. Parodi*, 703 F.2d 768, 780 (4th Cir. 1983); *see also United States v. Van Hemelryck*, 945 F.2d 1493, 1501 (11th Cir. 1991) (movant did not show that testimony was likely where the co-defendant "had not yet been tried" and intended to "invoke[] her Fifth Amendment privilege").

And even if the Markovichs had offered to testify unconditionally—which, despite bearing the burden of proof on this Motion, Waserstein fails to proffer—such testimony is still unlikely.  If convicted, the Markovichs presumably would not testify while awaiting sentencing or during the pendency of their appeal.  Moreover, D. Markovich is not currently charged with money laundering, and could still face criminal liability following an acquittal on all current charges.  Indeed, based on the representations in Waserstein's Motion, the only plausible conclusion is that D. Markovich would invoke his Fifth Amendment privilege in that scenario.  There is simply no reasonable probability that the Markovichs will testify if Waserstein's Motion is granted.[1]

---

[1]      J. Markovich also moved to sever Counts 34-35 (bank fraud relating to allegedly fraudulent Paycheck Protection Program loans).  [D.E. 158.]  This case does not need to be tried three times.

Furthermore, Waserstein fails to demonstrate with sufficient specificity the substance of the Markovichs' anticipated testimony or his need for it.  Although Waserstein suggests that the Markovichs will testify about Waserstein's lack of involvement in Compass Detox and WAR's addiction treatment services, Waserstein makes no mention of the roughly 200 former or current employees of those facilities who could presumably testify as to whether Waserstein participated in operations.  Considering the availability of other sources of evidence on this issue, Waserstein has not demonstrated a bona fide need for the Markovichs' testimony, as required under *United States v. Machado*, 804 F.2d 1537, 1544 (11th Cir. 1986), and *Byrd*, 428 F.2d at 1020.

In any event, it is impossible to conclude that the Markovichs' testimony is necessary because Waserstein supplies no affidavit from either Markovich, much less any proffer of "specific and exonerative" statements that they would offer to exculpate him.  *United States v. Novaton*, 271 F.3d 968, 990 (11th Cir. 2001).  Will the Markovichs admit guilt and explain how, for three years amongst what Waserstein describes as a tight-knit family, they intentionally avoided communicating with Waserstein about the company they co-owned and from which Waserstein made millions of dollars?  Perhaps they will admit guilt and explain how Waserstein was their very well-compensated, but unsuspecting, pawn in this scheme?  Common sense suggests that they will do neither of these things.  It seems they simply intend to testify that they are innocent, and so is Waserstein.  Considering the lack of specificity, the conditional nature of the offer to testify, and the self-serving nature of the proposed testimony, the Markovichs' proposed testimony lacks any indicia of credibility.  *See, e.g.*, *United States v. DeSimone*, 660 F.2d 532, 540 (5th Cir. 1981).

Finally, on this weak showing, other considerations weigh in favor of denying the Motion. Waserstein will not be severely prejudiced without this testimony because numerous other sources exist for similar testimony, and he will have other defenses.  He is unlikely to have the benefit of

the testimony even if he is severed.  And, with no trials in this district in nearly a year, judicial economy considerations are particularly acute.  Trying a multi-week addiction treatment fraud, money laundering, and bank fraud case twice (or even three times)—when it can be tried fairly as to all defendants once—would needlessly squeeze an already strained justice system.

## FACTUAL BACKGROUND

On September 25, 2020, Waserstein was charged by criminal complaint ("Complaint") with conspiracy to violate the Eliminating Kickbacks in Recovery Act ("EKRA") in violation of 18 U.S.C. § 371; conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h); and money laundering in violation of 18 U.S.C. § 1957(a).  *United States v. Jonathan Markovich, et al.*, 20-MJ-6469-PMH, D.E. 1.  Nine other individuals, including J. Markovich and D. Markovich were charged in the Complaint.  Judge Valle found probable cause existed to hold Waserstein and the other nine defendants over for further proceedings.  [D.E. 81.]  On January 19, 2021, Waserstein was indicted with conspiracy to commit money laundering in violation of 18 U.S.C. § 1956(h) and multiple substantive money laundering counts in violation of 18 U.S.C. §§ 1956(a)(1)(B)(i) and 1957(a).  *United States v. Jonathan Markovich, et al.*, 21-CR-60020-WPD, D.E. 110.  Seven other defendants, including the Markovichs, were also indicted.

J. Markovich and D. Markovich (among other defendants) were indicted for conspiracy to commit health care and wire fraud, substantive health care fraud, conspiracy to violate EKRA, and substantive EKRA violations.  Like Waserstein, J. Markovich was also indicted for various money laundering charges (while D. Markovich was not).  J. Markovich is also charged with bank fraud.

Brothers-in-law Waserstein and J. Markovich co-owned Compass Detox and WAR, two facilities that purportedly provided substance abuse treatment to individuals suffering from drug or alcohol addictions.  As alleged in the Complaint and Indictment, beginning in April 2017, Compass Detox and WAR engaged in a $112 million scheme that operated as follows:

5

- Patient brokers often recruited patients to Compass Detox and WAR in exchange for illegal kickbacks and bribes, such as flights, cash and drugs/alcohol. Complaint, ¶ 65; Indictment, Count 1, ¶ 5. The government presented evidence at the preliminary hearing that Waserstein was aware of these inducements and Judge Valle sustained a kickback conspiracy count against Waserstein (he subsequently was not indicted on this charge).

- Conspirators gave patients illegal drugs prior to admission and/or readmission to Compass Detox to cause these patients to test positive for drugs and qualify for detox—the highest and most expensive level of care—when such care was not medically necessary and was based on a material omission. Complaint, ¶ 65; Indictment, Count 1, ¶ 16.

- Patients were routinely recycled from Compass Detox to WAR and back for the purposes of billing for multiple stays without regard to whether such repeated treatment was working or whether the billed level of care was medically necessary. For example, patients who relapsed in outpatient programs at WAR would be sent back to Compass Detox for detox, even if a lower level of care was appropriate. Complaint, ¶ 65; Indictment, Count 1, ¶ 17.

- Patients used illegal drugs while at Compass and WAR, and positive tests for drugs had no consequences and did not change patients' treatment plans. Complaint, ¶ 65; Indictment, Count 1, ¶ 14.

- Conspirators gave patients scheduled medications and a "comfort drink" to keep them docile and compliant while enrolled for treatment. These medications were prescribed in dangerous quantities and combinations, had no therapeutic benefit, jeopardized the patients' recovery, and rendered addiction treatment ineffective. Complaint, ¶ 65; Indictment, Count 1, ¶¶ 9-12.

- Conspirators billed for expensive therapy sessions that never occurred or which patients did not attend. Complaint, ¶ 65; Indictment, Count 1, ¶ 13.

- Even if patients did attend therapy sessions that were billed, these therapy sessions were nonetheless fraudulently billed because they often were so substandard as to be essentially meaningless, were given by unqualified personnel, and many patients were so intoxicated on illegal drugs, controlled substances, and/or the comfort drink that they could not meaningfully participate. Complaint, ¶ 65; Indictment, Count 1, ¶ 13.

- The conspirators submitted and caused to be submitted false and fraudulent billings for expensive, excessive, and medically unnecessary urine drug tests (and blood tests) for Compass Detox and WAR patients referred to various clinical laboratories. Complaint, ¶ 65; Indictment, Count 1, ¶ 14.

- The conspirators systematically referred patients for medically unnecessary chiropractic services following falsified chiropractic referrals generated by Compass Detox staff, for which a conspirator billed. Complaint, ¶ 65; Indictment, Count 1, ¶ 19.

- Waserstein and J. Markovich extracted fraud proceeds for their personal gain, use and benefit, often by funneling money into shell companies disguised as "management" and "consulting" payments, or as charitable contributions; and J. Markovich falsified applications for COVID-19 relief money.  Complaint, ¶ 65; Indictment, Counts 25-35.

## LEGAL STANDARD

"There is a preference in the federal system for joint trials of defendants who are indicted together." *Zafiro*, 506 U.S. at 537.  To that end, "[d]enial of a motion to sever is within the broad discretion of the district court."  *United States v. Harris*, 908 F.2d 728, 739 (11th Cir. 1990). Indeed, severance to obtain exculpatory testimony from a co-defendant should only be granted if the moving defendant makes a clear showing of:  "(1) a bona fide need for the testimony; (2) the substance of the desired testimony; (3) the exculpatory nature and effect of the desired testimony; and (4) that the codefendant would indeed have testified at a separate trial."  *Machado*, 804 F.2d at 1544; *see also United States v. DiBernardo*, 880 F.2d 1216, 1228 (11th Cir. 1989) (same) (citing *DeSimone*, 660 F.2d at 539).  After this initial showing, the court must "(1) examine the significance of the testimony in relation to the defendant's theory of the case; (2) assess the extent of prejudice caused by the absence of the testimony; (3) consider judicial administration and economy; (4) and give weight to the timeliness of the motion."  *Machado*, 804 F.2d at 1544.

## ARGUMENT

Waserstein does not argue that he is improperly joined as a defendant in this case, nor could he.  Rule 8(b) permits joinder of defendants when they are "alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses."  Fed. R. Crim. P. 8(b).  Here, although Waserstein has not been indicted for fraud or kickbacks, the Government alleges that he laundered fraud proceeds with knowledge of some unlawful activity.  On these allegations, Waserstein is properly joined with his co-defendants.  *See United States v. Saget*, 991 F.2d 702, 707 (11th Cir. 1993) ("joinder of multiple defendants is

proper whenever there is a 'common thread' between the actions charged against them") (citation omitted); *United States v. Pepe*, 747 F.2d 632, 650 (11th Cir. 1984) ("coconspirators should normally be tried jointly, [] and the fact that a defendant may have participated in only a single aspect of a conspiracy does not, by itself warrant severance") (citations omitted).

Instead, Waserstein argues that he should be severed under the *Machado* (or *Byrd*) tests because he needs his brothers-in-law to testify in his defense. Waserstein fails to satisfy his burden under *Machado* because: (1) the Markovichs' supposed offer to testify is impermissibly conditioned on Waserstein being tried after the Markovichs, and the Markovichs being removed from jeopardy; (2) Waserstein's proffer about the Markovichs' proposed testimony is conclusory and insufficient to establish a bona fide need for the testimony, the substance of the testimony, or its exculpatory nature; and (3) interests of judicial economy and the lack of prejudice to Waserstein in being tried with his co-defendants both weigh against severance.

## I.   WASERSTEIN CANNOT SHOW THAT THE MARKOVICHS WILL TESTIFY.

Waserstein cannot satisfy an essential prong of the *Machado* analysis—that either Markovich "would indeed have testified at a separate trial." *Machado*, 804 F.2d at 1544. The offer presented is impermissibly conditional and, in any event, other considerations that go unaddressed by Waserstein confirm that it is unlikely that the Markovichs will testify.

### A. The Markovichs' Offer To Testify Does Not Satisfy *Machado* Because It Is Conditioned On Trial Sequence And Outcome.

Waserstein could not be clearer when he states: "the Markovichs will testify for Mr. Waserstein <u>if he is tried in a later, separate trial</u>." Mot. at 8 (emphasis added); *see also* Mot. at 1 (Markovichs "would likely invoke their right to silence at a joint trial."). This dooms his Motion, because "[a]n offer to testify, conditioned upon being effectively removed from jeopardy or upon

future evidentiary rulings, does not satisfy the fourth *Machado* threshold prong when the district court concludes that the defendant will not in fact testify." *Funt*, 896 F.2d at 1298.

The Markovichs' proposed testimony is conditioned upon (1) the Markovichs being tried first; and (2) the Markovichs being acquitted. This is exactly the sort of conditional offer to testify that the Eleventh Circuit, and every other circuit in this country, has deemed insufficient when evaluating severance motions under *Machado*/*Byrd* or similar tests. *See Van Hemelryck*, 945 F.2d at 1501 (upholding denial of severance in part because the co-defendant "had not yet been tried," so "it is likely that she would have invoked her Fifth Amendment privilege if called to testify"); *United States v. Mack*, 572 F. App'x 910, 929-31 (11th Cir. 2014) (upholding denial of severance despite bona fide need for co-defendant's testimony because counsel only discussed "whether a defendant, whose trial was over, could testify for a co-defendant in a separate trial").[2] Courts deny

---

[2]     Sister Circuits throughout the United States have ruled the same. *See United States v. Smith*, 46 F.3d 1223, 1231 n.3 (1st Cir. 1995) ("If the offer to testify is conditioned on the order of the separate trials, there is an open question whether the codefendant's availability meets *Drougas*' first-tier requirements. We note, however, that several of our sister circuits have ruled that an offer to testify, conditioned on one defendant being tried before the other, fails to satisfy the elements of a prima facie case for severance."); *United States v. Bari*, 750 F.2d 1169, 1177 (2d Cir. 1984) ("The offers to testify were expressly conditioned on Daniel being tried last, a condition which smacks of bad faith."); *United States v. Bates*, 46 F. App'x 104, 108-09 & n.3 (3d Cir. 2002) (conditional offers to testify do not warrant severance); *United States v. Parodi*, 703 F.2d 768, 779 (4th Cir. 1983) (severance not appropriate if "offer to testify is further conditioned on the co-defendant's case being tried first"); *United States v. Broussard*, 80 F.3d 1025, 1038 (5th Cir. 1996) ("Torres's offer [to testify for co-defendant] was contingent upon his trial occurring before Castro's; thus, it did not constitute an unequivocal offer to testify."); *United States v. Hardman*, 805 F.2d 1037, 1986 WL 18184, *6 (6th Cir. 1986) (per curiam) (unpublished) ("[T]he co-defendant's conditional offer to testify if they were tried first will not support a finding that the district court abused its discretion in denying the motion for severance."); *Mack v. Peters*, 80 F.3d 230, 235-37 (7th Cir. 1996) (offer to testify that is conditioned on order of trials does not require severance); *United States v. Jagim*, 978 F.2d 1032, 1040 (8th Cir. 1992) (denying severance where co-defendant offer to testify "was conditional: Ziebarth would testify *only* if his trial preceded Jagim's"); *United States v. Larios-Montes*, 500 F.2d 941, 944 (9th Cir. 1974) (severance not warranted when co-defendant "would not testify unless the government would dismiss nine of the counts against him"); *United States v. Espinosa*, 771 F.2d 1382, 1408 (10th Cir. 1985) ("A defendant can not [sic] establish the willingness of a co-defendant to testify on his behalf if the co-

severance under such circumstances for good reason—a conditional offer like the Markovichs' demonstrates that their testimony is "unlikely," *Bari*, 750 F.2d at 1177, the offer "smacks of bad faith," *id.*, and the offer is an "alibi-swapping device," *Parodi*, 703 F.2d at 780; *see also United States v. Reavis*, 48 F.3d 763, 767 (4th Cir. 1995) ("Were we to accede to the co-defendant's demand, we would create a situation where, following his own trial, the witness would be more inclined to 'throw a bone' to his codefendants by testifying favorably to them because his own case had been disposed of and he had little to lose by testifying.") (citations omitted).

Here, Waserstein asks the Court to permit him to see how the chips fall in the Markovichs' trial and then decide how to defend his own case. *Machado* and *Byrd* do not authorize such indulgences, particularly in the face of the strong preference for defendants indicted together to be tried together and the enormous backlog the justice system will be facing when trials eventually resume in this district. *See United States v. Frazier*, 394 F.2d 258, 261 (4th Cir. 1968) ("proper criminal procedure[] for severance[] cannot be based on" defendant's "gamble[]" that "he might be lucky enough to draw a trial date subsequent to that of one of his confederates"); *United States v. Blanco*, 844 F.2d 344, 353 (6th Cir. 1988) (offer to testify "was illusory because it was conditioned upon [co-defendant] being tried before Spinola" and "[w]e are not willing to read Rule 14 as a mechanism for alleged co-conspirators to control the order in which they are tried").

### B.  The Markovichs Are Unlikely To Testify Even If Waserstein Is Severed.

Waserstein argues that he has "unquestionably" shown that the likelihood the Markovichs will testify is "abundantly more than a 'gleam.'  Mot. at 8 (quoting *Byrd*, 428 F.2d at 1022).

---

defendant's offer is 'further conditioned on the co-defendant's case being tried first.'") (citation omitted); *United States v. Washington*, 12 F.3d 1128, (D.C. Cir. 1994) (upholding denial of severance in part because each co-defendant "basically has conditioned his willingness to testify on an extraordinary trial arrangement that the Court does not consider viable").

Whatever that means, Waserstein's Motion does "not establish that [the Markovichs] would in fact testify if a severance were granted and it attempt[s] to usurp the district court's discretion to determine the order in which the defendants [will] be tried." *Broussard*, 80 F.3d at 1038.

The one reason offered by Waserstein—that his family is close-knit—provides no assurance of the Markovichs' testimony when viewed in light of the allegations of this case, and common sense. If the Markovichs are convicted, they would retain their Fifth Amendment rights while pending sentencing and, presumably, would not want to testify during the pendency of any appeal that could lead to their retrial. In this scenario, they are decidedly unlikely to testify.

Assuming their acquittal on the present charges—which appears to be exactly what Waserstein is banking on—the odds that the Markovichs will testify at a later trial are low, at best. Indeed, they are likely non-existent. In the case of D. Markovich, even if he were acquitted of the charges he currently faces, he would not be removed from jeopardy on potential money laundering charges, so it is unlikely he would testify at all. D. Markovich was a director of the charity that the Government alleges was used to launder fraud proceeds in Counts 25-26.[3] If D. Markovich testifies, he will be questioned about his knowledge of the charity's operations and supposed charitable purpose. He will be asked who controlled the charity's money and about its relationship to Compass Detox. Truthful answers to may incriminate him. If D. Markovich was not involved with the charity, then his absence implicates the other two directors, J. Markovich and Waserstein. If D. Markovich was involved, he will know about Waserstein's involvement in orchestrating the transactions discussed in Counts 25-26. And the Markovichs may want to avoid testifying so they are not asked about other family members' involvement with their business. Therefore, the

---

[3]     *See*, Ness Group Foundation, Inc., Articles of Incorporation, *available at* http://search.sunbiz.org/Inquiry/CorporationSearch/ConvertTiffToPDF?storagePath=COR%5C2 018%5C1025%5C00306453.Tif&documentNumber=N18000011253.

Markovich/Waserstein familial affinity cannot alter the additional exposure that may linger even if the Markovichs are fully acquitted of the current charges.[4]

## II. WASERSTEIN DOES NOT SATISFY THE REMAINING THREE *MACHADO/BYRD* FACTORS.

Although Waserstein's Motion fails solely because the Markovichs' conditional offer to testify does not satisfy *Machado*, the Motion should be denied for additional independent reasons. Waserstein has not established a bona fide need for the Markovichs' testimony, what the substance of the testimony will be, or its exculpatory nature.

### A. Waserstein Has Not Established A Bona Fide Need For The Testimony.

If Waserstein's primary defense is that he was uninvolved in the treatment services at issue, he can call any of Compass Detox and WAR's nearly 200 other employees who have not been charged in the case, Compass Detox's several other investors who were not charged, or any of the over 900 patients who supposedly attended these treatment facilities.[5]  Waserstein does not attempt to address these other potential sources of evidence and, instead, merely asserts that the Markovichs were the "only persons involved in certain aspects of the activities charged as criminal."  Mot. at 10 (citing *DiBernardo*, 880 F.2d at 1228).  Given that 10 defendants were charged by criminal complaint in this case, and that Compass Detox and WAR over time employed nearly 200 additional individuals, the assertion that the Markovichs are the "only" individuals who can testify about Waserstein's lack of involvement in a business that was open to the public for multiple years is, to put it mildly, a real stretch.  *Cf. United States v. Cobb*, 185 F.3d 1193, 1198

---

[4]     Waserstein does not attempt to grapple with the fact that both Markovichs had other family members, including Waserstein's spouse (Markovichs' sister), who were involved with Compass Detox but have not been charged.  Given the family's broad involvement in Compass Detox and WAR, the family relationship could equally dissuade the Markovichs from testifying.

[5]     The Government is not conceding any objections to potential testimony or evidence.

(11th Cir. 1999) (severance appropriate because the only other potential witness who was present during the crime and could exculpate defendant was a fugitive). Waserstein is charged with money laundering. To be convicted, he need not have ever set foot in Compass Detox or WAR or been involved in the treatment of patients. He simply needs to have been involved in laundering funds that were, in fact, fraud proceeds. To the extent one can discern anything about the Markovichs' proposed testimony from Waserstein's Motion, it is that Waserstein was not involved in daily operations. That fact is of minimal import to the charges Waserstein faces, and could be established by any witness (not just other defendants) who spent time at Compass Detox and WAR.

The very cases that Waserstein cites on this point belie his argument. In *DiBernardo*, not only did the movant submit "sworn statements" demonstrating the "substance of his [co-defendant's] testimony, its exculpatory nature and effect, and his willingness to testify," but the information the co-defendant provided was "peculiarly within the knowledge" of the three co-defendants. 880 F.2d at 1228. In addition, the "district court examined [the testifying co-defendant] under oath with regard to his proposed testimony" and he "confirmed that he would supply exculpatory testimony in a trial of" the other defendants. *Id.* at 1219.[6] The Government challenged severance because it believed the co-defendant's testimony was perjurious; thus, the issues pertaining to severance in *DiBernardo* centered on the truth of the testimony, not, as here, the elementary requirements of the sufficiency of the proffer, need for the testimony, or conditional

---

[6]     Waserstein's selective reading of *DiBernardo* thus undermines Waserstein's position in yet another way. To the extent Waserstein continues to rely on *DiBernardo* in his reply brief, he should be prepared to put forth the substance of the Markovichs' anticipated testimony in a credible and specific way—such as through examination of the Markovichs under oath or sworn affidavits.

nature of the offer.  As to the issue of severance, on this record, the Court of Appeals upheld the district court's discretionary grant of severance.  *Id.* at 1228.[7]

Likewise, *Nissenbaum* differed materially from the situation here.  In that case, which charged a husband and wife in connection with bankruptcy petitions they signed, Mr. Markus proffered to the court that the financial documents at issue were prepared "just like a tax return between a couple."  *United States v. Yechezkel Nissenbaum*, 16-cr-20333-MGC, D.E. 121, 7:3-8 (Tr. of May 3, 2017 Hr'g).  In other words, to substantiate the defense, Mr. Markus represented that he required testimony about "what happened in the marital home," *id.*, which could not have been obtained except from the co-defendant spouse.  Judge Cooke's analysis in granting severance relied exclusively on this marital relationship.  After distinguishing a case cited by the Government because (as here) the defendants were not married, Judge Cooke stated that "that seems to be the real thing here, …. [w]e have separate criminal actors in the most intimate of relationships, a marriage."  *Id.* at 8:18-22.  Judge Cooke also observed that, "in the normal co-defendant conspiracy case"—which is what Waserstein's case presents—"I would be inclined to deny Mr. Markus' motion."  *Id.* at 10:20-22.  But because the case involved marriage, "the next most intimate relationship" to a parent-child relationship, she granted severance.  *Id.* at 10:20-11:4.

Waserstein's spouse is not a defendant, and simply because the defendants are in-laws does not mean that they have the sort of intimate relationship that Judge Cooke described; nor does it mean that Waserstein requires testimony from his brothers-in-law when there were many dozens of other employees participating in the underlying addiction treatment.  The dynamics of signing

---

[7]    *DiBernardo* affirmed severance.  Thus, the issue in *DiBernardo* was really the order of severed trials, once the district court had concluded severance was appropriate.  Here, severance is not appropriate, especially under *DiBernardo*, so the Court need not reach the question of how to order the trials.

a tax return or other financial documents as a married couple are far different than multiple defendants, and hundreds of others, operating a business that is open to the public or spending proceeds from that business.  And in any event, the *Nissenbaum* case was much less complex than the present case, requiring only three to five days for trial.  *Id.* at 7:18-19.[8]

In addition, Waserstein and his co-defendants are free to present evidence that there was no underlying fraud.  They do not need the Markovichs for this defense; they can hire a medical expert or present other witnesses that dispute the Government's theory of fraud.  If there was no fraud, there were no fraud proceeds to launder.

**B.   Waserstein Has Not Demonstrated The Substance Of The Markovichs' Testimony Or Its Exculpatory Nature.**

Under *Byrd*, Waserstein "must make a clear showing of what the codefendant would testify to" in order to warrant severance, *Byrd*, 428 F.2d at 1020; his Motion decidedly fails this test. The Motion describes the Markovichs' anticipated testimony solely in conclusory fashion:

- "The strongest exculpatory evidence to demonstrate Mr. Waserstein's innocence is the testimony of the Markovichs, who have firsthand knowledge that Mr. Waserstein simply was not involved in the matters giving rise to the health care fraud, kickback charges, and bank fraud."  Mot. at 3.

- "Richard Waserstein's defense turns in large part on his minimal involvement in the companies in which he invested—proof of which can be provided through the testimony of Jonathan and Daniel Markovich."  *Id.*

- "Waserstein had no knowledge of this activity.  The best, and perhaps the only, way he can establish this defense is through the testimony of the Markovichs."  *Id.* at 8.

- "The Markovichs' testimony would directly contradict the Government's theory and explain how Richard Waserstein was kept in the dark as to the business activities of the treatment centers."  *Id.* at 9.

---

[8]     The *Kaley* case cited by Waserstein likewise involved a husband-wife relationship.  In addition, in that case Mr. Markus at least supplied a redacted interview report memorializing the co-defendants' expected testimony; nothing similar has been presented here.  *See United States v. Kerri Kaley*, 07-cr-80021-DPG, D.E. 463 at 10 (Mar. 25, 2015).

None of these statements describes a single specific fact that the Markovichs will testify to, much less the "exact nature of the exculpatory testimony," as required to satisfy *Machado*. *United States v. Hernandez*, 2008 WL 517089, *1 (S.D.F.L. Feb. 22, 2008) (Snow, J.).  Rather, these are the sort of "conclusory statements" devoid of "specific exonerative facts" that "consistently have been deemed insufficient" under *Machado*.  *Id.* at *2 (denying motion to sever); *see also Novaton*, 271 F.3d at 990 (description of anticipated testimony "must be specific and exonerative, rather than conclusory or self-serving, in order to justify severance").

In *Hernandez*, for example, the Court declined to sever the defendant even where both co-defendants submitted affidavits containing far more specific facts than Waserstein's bare-bones Motion does here.  2008 WL 517089, *2 (summarizing the affidavits, including statements regarding movant's lack of attendance at meetings or discussions about controlled substances, minimal participation in operations pertaining to prescribing controlled substances, and lack of involvement as a corporate officer); *Novaton*, 271 F.3d at 990 (affidavits did not contain "specific and exonerative facts"); *Van Hemelryck*, 945 F.2d at 1501 (affidavits "were unsigned, and while not strictly 'bare conclusory assertions tracking the language of the indictment,' … contained few specific exonerative facts") (citations omitted); *DeSimone*, 660 F.2d at 540 (affidavit "contain[ed] no clear indication of specific and exonerative facts" to which co-defendant would testify and, because the affidavit "did not contravene his own penal interests," it was "extremely self-serving" and "lacked a certain amount of credibility"); *Harris*, 908 F.2d at 739 (same).[9]

In addition, nothing about the Markovichs' proposed testimony is "contrary to [their] penal interests" and their proposed testimony does not "contain any other indicia of credibility."

---

[9]    While is unclear that an affidavit is the only way to present "specific exonerative facts," Waserstein's proffer does not even approach the level of specificity that one might imagine from even the most skeletal affidavit.

*Novaton*, 271 F.3d at 990.  The Markovichs are not going to admit their own guilt and explain why Waserstein was not involved in their crimes.  From what has been disclosed, the Markovichs do not propose to take full (or any) responsibility for the alleged conduct.  Even J. Markovich's recent Motion to Dismiss states that, "as time went on, [J. Markovich] was not involved much in the day-today [sic] operations or interactions with patients."  [D.E. 157 at 2.]  Nor does Waserstein's proffer explain precisely how the Markovichs avoided informing their brother-in-law—a co-owner of Compass Detox and WAR—about the underlying misconduct.  That is not a trivial question in light of Waserstein's representation that he and the Markovichs "are almost inseparable," "live two blocks away" from each other, and spend nearly all Sabbat dinners and holidays together.  Mot. at 9.  To keep Waserstein in the dark, the Markovichs would have had to dance around the subject for three years, all while Waserstein remained an owner and received a substantial amount of money from the companies.  *See United States v. Johnson*, 713 F.2d 633, 641 (11th Cir. 1983) (upholding denial of severance in part because, "by failing to inculpate the affiant in any way, the proffer [of the co-defendant's anticipated testimony] lacked any substantial credibility") (citations omitted); *Pepe*, 747 F.2d at 651 (upholding denial of severance because proffered testimony was conclusory and "of dubious credibility because it was in no way contrary to the Santos' own interests").  Waserstein's Motion says nothing about what the Markovichs will admit or any specific facts about Waserstein's financial transactions at issue in the Indictment.

On this meager showing, Waserstein's motion is akin to *Esquenazi*, *Rivera*, *Alston*, and *Smith*, among other cases, which all denied severance in part because of the insufficiency of the moving defendant's showing as to his co-defendant's statements.

- In *United States v. Esquenazi*, 2011 WL 13079210, *10 (S.D.F.L. Oct. 12, 2011), Judge Martinez found the following:  "Rodriguez asserted that Esquenazi could 'testify as to the lack of participation and knowledge of the Defendant with regard to the alleged bribery scheme.'  He speculated that Esquenazi would not testify at

a joint trial, and that Esquenazi would testify at a separate, subsequent trial that Rodriguez was not involved in the bribery scheme.  These unsupported assertions do not show prejudice under *Byrd* and severance on these grounds is not proper." This is exactly what Waserstein proposes—that the Markovichs testify at a second trial about Waserstein's supposed lack of participation and knowledge—and Waserstein's severance motion should be rejected for the same reasons.

- In *Rivera v. United States*, 2018 WL 11183804, *27 (S.D.F.L. Jan. 4, 2018) (White, J.), *adopted by* 2018 WL 11183778 (Cohn, J.), the court denied severance because the "movant has not provided any objective evidence, by way of affidavit executed by his codefendant on or around the time of trial, demonstrating that severance would have resulted in obtaining 'material evidence' from him." Waserstein has likewise presented no objective evidence of the Markovichs' proposed testimony.

- In *United States v. Alston*, 2003 WL 27374308, *2 (S.D.F.L. Mar. 24, 2003) (O'Sullivan, J.), the court concluded that the defendant "failed to provide an affidavit by co-defendant Alston indicating the substance of Alston's proposed testimony or that Alston is available and willing to testify."  Likewise, Waserstein submits no affidavit from either Markovich.

- In *United States v. Smith*, 918 F.2d 1551, 1561 (11th Cir. 1990), the court found "the undocumented, conclusory allegations of the severance motion to be insufficient to overcome our strong circuit precedent favoring joint trials." Waserstein's vague assertions about what the Markovichs might say is equally undocumented.

The one case Waserstein cites constantly, *Byrd*, undercuts his argument on this front.   In *Byrd*, the defendant and six others were indicted in a Florida state court for rape stemming from "the mass rape of the same young woman on a single occasion."  428 F.2d at 1018. (They were not, as Waserstein is, charged with participating in a multi-year conspiracy with multiple witnesses and victims; rather, they were charged with a single crime at one location on one occasion.)  The other six defendants in *Byrd* confessed.  "Five confessions purported to name all persons present at the commission of the crime; only one of these five named Byrd.  Another of the five affirmatively stated that Byrd was not present.  The sixth implicated Byrd as an active participant in the crime," but that defendant's counsel later proffered that the implication was an error.  *Id.*  All six confessions were suppressed.  *Id.*  Therefore, Byrd was unable to call any of

18

these defendants to testify at a joint trial, but he also was unable to introduce their exculpatory confessions, which were taken in violation of Miranda. *Id.* at 1020-21. Such testimony is not even remotely close to what Waserstein offers in conclusory fashion here.

## III.   OTHER CONSIDERATIONS WEIGH AGAINST SEVERANCE.

As discussed in Sections I and II, if Waserstein is severed, he is not likely to have the benefit of the Markovichs' testimony in any situation (even if he is tried after the Markovichs). Other potential sources of evidence of Waserstein's involvement exist, and Waserstein has not attempted to explain why the Markovichs' testimony is necessary in light of other evidence. And it is far from clear, based on the vague and self-serving descriptions of the Markovichs' testimony, that any such testimony would, in fact, be exculpatory. Thus, while Waserstein might desire to present the Markovichs' testimony (or, perhaps more likely, simply does not want to be tried with other defendants whose alleged conduct was distasteful), it is not necessary to present the Markovichs' testimony, and Waserstein is not likely to be considerably prejudiced in its absence.

Likewise, judicial economy considerations argue squarely against severing Waserstein. Courts have denied severance motions where, as here, a separate trial would require "the admission of hundreds of documents and the testimony of multiple experts and cooperating co-defendants." *Hernandez*, 2008 WL 517089, *2; *see also Harris*, 908 F.2d at 739 ("any prejudice resulting from the exclusion of [co-defendant] testimony was outweighed by considerations of judicial economy inherent in a complex conspiracy case"); *Novaton*, 271 F.3d at 990-91 (denial of severance was not abuse of discretion, "particularly in light of the substantial systemic interest in handling this complex, conspiracy case in one trial (which lasted two months)").

The Government anticipates that this trial will last five to eight weeks. To date, the Government has produced hundreds of thousands of pages of documents in discovery, plus voluminous native files including web portals containing patient files and multiple spreadsheets

with thousands of lines of billing data.  The Government expects to call 20 or more witnesses, including experts and cooperators who will be on the stand for multiple days.  Trials have not occurred in this district for roughly a year, and there will be tremendous backlog of cases whenever trials can resume.  Waserstein is charged in a conspiracy to launder money with J. Markovich, and evidence about the underlying health care fraud and wire fraud conspiracy, and kickbacks, will necessarily be part of the proof of specified unlawful activity for money laundering.  This Court can try Waserstein and his co-defendants fairly in a single trial, so judicial economy is not served by trying this complex case twice, particularly considering the need to ensure that other criminal defendants in many other pending cases may also exercise their trial rights. The Court should exercise its discretion to deny Waserstein's Motion.  *Harris*, 908 F.2d at 739 ("Denial of a motion to sever is within the broad discretion of the district court.").

## CONCLUSION

For the foregoing reasons, Waserstein's Motion should be denied.

Dated: March 12, 2021                                     Respectfully submitted,

                                                                         ARIANA FAJARDO ORSHAN
                                                                         UNITED STATES ATTORNEY
                                                                         SOUTHERN DISTRICT OF FLORIDA

                                                                         DANIEL KAHN, ACTING CHIEF
                                                                         CRIMINAL DIVISION, FRAUD SECTION
                                                                         U.S. DEPARTMENT OF JUSTICE

                                                 By:      */s/ James V. Hayes*_____
                                                                         JAMES V. HAYES (FL Bar #A5501717)
                                                                         Senior Litigation Counsel
                                                                         JAMIE DE BOER (FL Bar #A5502601)
                                                                         Trial Attorney
                                                                         United States Department of Justice,
                                                                         Criminal Division, Fraud Section
                                                                         1400 New York Avenue, N.W.
                                                                         Washington, D.C. 20005
                                                                         Telephone: (202) 774-4276

James.Hayes@usdoj.gov
Jamie.deBoer@usdoj.gov

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on March 12, 2021, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

/s/ *James V. Hayes*