UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-60020-CR-DIMITROULEAS/SNOW

UNITED STATES OF AMERICA

vs.

JONATHAN MARKOVICH,
RICHARD WASERSTEIN,
DANIEL MARKOVICH,
CHRISTOPHER GARNTO,
JOSE SANTEIRO,
DREW LIEBERMAN,
MARIO KUSTURA, and
FRANK BOSCH, JR.,

        Defendants.
_____/

**RICHARD WASERSTEIN'S REPLY IN SUPPORT OF HIS MOTION TO SEVER**

      The Government's rhetorical flourishes in its Response to Richard Waserstein's Motion for Severance do not not cover up the significant legal flaws that pervade its argument. This Reply will address some of those flaws and demonstrate why the motion should be granted.

      1.     For starters, the Government greatly minimizes what it needs to prove in its money laundering case against Richard Waserstein: "To be convicted, [Waserstein] need not have ever set foot in Compass Detox or WAR or been involved in the treatment of patients. He simply needs to have been involved in laundering funds that were, in fact, fraud proceeds." Response at 13. This statement underscores the Government's misunderstanding of the law and destroys its premise that

Waserstein does not need the brothers' testimony. It is not enough for the Government to simply show that the funds were proceeds of fraud. Instead, to obtain a conviction against Waserstein for 18 U.S.C. 1957(a), for example, the Government must prove beyond a reasonable doubt that Waserstein "**knew** that the property involved in the monetary transaction was obtained or derived from committing some crime." *See* Eleventh Circuit Pattern Instruction O74.6 (emphasis added).

According to the Indictment, the Markovich brothers "established, operated, and controlled Compass Detox and WAR." Indictment at 14. Therefore, they are in the best position to explain Waserstein"s involvement in the business and whether he **knew** what was occurring there. They can testify whether he was a passive or active investor (he was passive). They can explain whether he participated in the day-to-day decision making (he did not). They can say whether he was present and saw what was happening at Compass and WAR (he did not). And they can discuss whether he was kept abreast of the operations and activities at Compass and WAR (he was not).

2.   In a transparent attempt to misdirect the Court, the Government states that "Waserstein makes no mention of the roughly 200 former or current employees of those facilities who could presumably testify as to whether Waserstein participated in operations." Response at 4. The Government's belief that non-management level employees could testify about Waserstein's involvement is misplaced. Waserstein did not invest with these other employees or regularly engage with them. The Government alleges that Waserstein laundered funds for the Markovich brothers, not other employees. It is their testimony that is needed to explain that Waserstein had

extremely limited knowledge and involvement with these facilities.

3. The Government claims that the *Funt* case "dooms [the] Motion" because the brothers "proposed testimony is conditioned upon (1) the Markovichs being tried first; and (2) the Markovichs being acquitted." Response at 9. The Government's reliance on *Funt* is misplaced. The motion for severance in *Funt* came during the seventh week of trial. And the proposed witness said he would only testify if the court severely limited potential cross-examination by the government. This idea of limiting cross-examination is what is meant by conditional offers to testify.

The Markovich brothers have not conditioned their testimony with such a demand. Instead, they have said what every single defendant says in these severance motions – they will not testify if called in a joint trial because they would invoke their Fifth Amendment Privilege in order not to incriminate themselves. Instead, the Markovichs only could be subpoenaed to testify at a separate trial. That is the whole point of the severance – if they were called at a separate trial, then they would be available to testify as they would not be placing themselves in jeopardy by answering questions, especially on cross-examination by the Government. This is how every severance in these situations plays out. The Defendant gets severed because the co-defendant only could testify in a separate trial. *See Kerri and Brian Kaley*, 07-cr-80021-Gayles, *Charles and Tamar Nissenbaum*, 16-cr-20333-Cooke, *United States v. DiBernardo*, 880 F.2d 1216, 1226 (11th Cir. 1989); *Byrd v. Wainwright*, 428 F.2d 1017 (5th Cir. 1970); *United States v. Echeles*, 352 F.2d 892 (7th Cir. 1965) (defendant must be given "opportunity" to put forth exculpatory testimony before the jury). And

contrary to the Government's claim, the Markovich brothers have not said that they would only testify if they were acquitted. Counsel plans on calling them as witnesses whether they are convicted or acquitted at their separate trial.

4. Realizing the weakness of its position, the Government resorts to veiled threats against the Markovichs and their sister. Response at 3 ("Moreover, D. Markovich is not currently charged with money laundering, and could still face criminal liability following an acquittal on all current charges."). Response at 11 ("And the Markovichs may want to avoid testifying so they are not asked about other family members' involvement with their business."). The Government continues with these not-so-subtle threats: "Waserstein does not attempt to grapple with the fact that both Markovichs had other family members, including Waserstein's spouse (Markovichs' sister), who were involved with Compass Detox but have not been charged." *Id.* Such tactics are unbecoming of the Government and shows that it is fearful of the brothers' truthful testimony at Waserstein's trial.

5. Understanding that the fact pattern here mirrors the *Nissenbaum* and *Kaley* cases from this District, the Government tries to distinguish them by saying that they involve a husband/wife relationship and not brothers-in-law. But the marital relationship is not what drives the decision to sever in these cases. It is the right to present defense witnesses, who are unavailable at a joint trial. Without the Markovich brothers, Waserstein will not be able to explain the circumstances of his investment in these companies or his limited involvement after the investment was made. The fact that these are family members helps, not hurts, his position as *Nissenbaum* and

*Kaley* teach. There is not a husband/wife requirement under Rule 14 or *Byrd v. Wainwright*, 428 F.2d 1017 (5th Cir. 1970).

6.   Finally, the Government cites to judicial economy but does not address the point in our initial motion of how a case with 8 defendants and multiple lawyers can be tried effectively during the pandemic. By necessity, this case should be broken up into smaller parts. This motion presents one way to accomplish a manageable pandemic trial.

        Respectfully submitted,

        **MARKUS/MOSS PLLC**
        40 N.W. Third Street
        Penthouse One
        Miami, Florida 33128
        Tel: (305) 379-6667
        Fax: (305) 379-6668
        markuslaw.com

        By:   /s/ David Oscar Markus
                DAVID OSCAR MARKUS
                Florida Bar Number 119318
                dmarkus@markuslaw.com

                A. MARGOT MOSS
                Florida Bar Number 091870
                mmoss@markuslaw.com