UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 21-60020-DIMITROULEAS/SNOW

UNITED STATES OF AMERICA

v.

RICHARD WASERSTEIN,
DREW LIEBERMAN,
JOSE SANTEIRO, and
FRANK BOSCH, JR.

      **Defendants.**
_____/

**SUPPLEMENTAL NOTICE OF INTENT TO USE EXPERT WITNESS AND
GOVERNMENT'S DISCLOSURE OF EXPERT WITNESS AND EVIDENCE**

The United States of America hereby files this Expert Disclosure, pursuant to the Standing Discovery Order, as well as Federal Rules of Discovery 702, 703, and 705. In its prior expert disclosure in this case [D.E. 202], the Government noted that as part of its case in chief, the United States may introduce the testimony of Dr. Kelly J. Clark.[1] Dr. Clark produced two expert reports that have already been produced to defense counsel. In addition, Dr. Clark testified in the first trial in this case against the Markoviches, and the Government has provided a copy of her testimony transcripts to the defense. However, due to reasons already disclosed to defense counsel, Dr. Clark will be unable to testify in the trial against the above-captioned defendants. Therefore, the Government may call Dr. R. Corey Waller as an expert witness to testify at trial. He is surely qualified, his methodology of testifying relying on his experience in the industry meets

---

[1] Dr. Clark's resume and two expert reports have already been provided to defense counsel under separate cover and copies can be furnished to the Court as well, if necessary.

1

the *Daubert* standard, and his testimony would be helpful to the jury as they evaluate the allegations in this case.

Dr. Waller will follow the ruling on the expert testimony of Dr. Clark made by this Court in the first trial, namely, that the expert may not testify to legal conclusions or to any ultimate decision in the case.   [D.E. 274.]

Dr. Waller is a licensed Medical Doctor (M.D.) in Michigan.   He has extensive experience in the addiction treatment field.   Since 2018, he has been a Principal and then Managing Director of the HMA Institute on Addiction.   Since 2020, he has practiced emergency medicine in multiple emergency departments.   Before this, he served as Senior Medical Director for Education and Policy at The National Center for Complex Health and Social Needs, as a Director for the Center for Integrative Medicine, and the President of the Michigan Society of Addiction Medicine, among other experiences.   He is board certified in addiction medicine and emergency medicine.   He is the editor-in-chief of the American Society of Addiction Medicine ("ASAM") criteria, which are the standards for addiction treatment.

Dr. Waller's testimony, including any expert opinion he renders, will be based on his: (1) professional expertise, including his medical training, clinical experience, and board certifications; (2) knowledge of relevant medical standards of practice and care in the substance abuse treatment field; (3) review and publication of medical texts, journals, and treatises; (4) his employment history; and (5) his continuing medical education requirements.

In addition, the Government has provided defense counsel with two expert reports written by Dr. Clark in this case.   Defense counsel also has the Government's prior expert notice of Dr. Clark [D.E. 202], and the transcripts of Dr. Clark's testimony, which spanned several days in the

2

Markoviches' trial and focused on the patients charged in the substantive health care fraud counts with which Dr. Santeiro is also charged. Dr. Waller will review the expert reports that defense counsel received months ago, and will review the patient files and billing data for the patients discussed in Dr. Clark's report. While Dr. Waller may also review additional patients as part of his work in this case and in preparation for trial, the Government does not expect him to discuss many, if any, new patients in depth at trial, which will prevent any "trial by ambush" situation.

Finally, the Government wishes to stress that Dr. Waller will conduct his own independent review of the patient files discussed in the first Compass Detox trial, and the billing data, and will draw his own conclusions. While Dr. Clark's prior reports and testimony are a guideline for discovery purposes of Dr. Waller's likely testimony in this case for the defendants, Dr. Waller will not simply serve as a carbon-copy stand-in for Dr. Clark. Dr. Clark's expert reports will not testify; Dr. Waller will. If Dr. Waller notes any significant differences with Dr. Clark's conclusions in this case, the Government will of course notify defense counsel.

## EXPECTED AREAS OF EXPERT TESTIMONY[2]

Dr. Waller's testimony will cover the same topics that the Government outlined in its prior expert disclosure for Dr. Clark. [D.E. 202.] The Government incorporates its prior notices herein as a description of the topics and opinions that Dr. Waller's testimony may cover. At a high level, Dr. Waller may testify regarding the following:

- Substance abuse treatment generally, including the types of patients who are appropriate for substance abuse treatment; the different kinds of substance abuse treatment; and the

---

[2] Dr. Waller's testimony will cover many of the same topics that the Government outlined in its prior expert disclosure for Dr. Clark [D.E. 202]. The Government includes this description here in abbreviated form for ease of reference so the Court, and counsel, do not have to look at another document, and can simply read it here.

applicable standards of care for professionals in the field.

- The use of urinalysis (UA) testing in substance abuse treatment, including the types of UA testing, when such testing is medically necessary, how it should be used in treatment, and how it is billed.

- The different kinds of medications used in addiction treatment, when such medications are appropriate and how they should be monitored.

- The use of therapy in addiction treatment and what constitutes legitimate therapy.

- Medical oversight of addiction treatment, including what constitutes proper medical oversight and improper medical oversight.

- The proper documentation of treatment, including UAs, therapy, treatment plans, admissions and discharges, and medications, in patient files.

- The certifications and licensing procedures applicable to addiction treatment facilities and the use of Policy and Procedures Manuals as a condition of licensure outlining their compliance with that state's standards of care in the addiction treatment field, and for the levels of care their facility purports to provide.

- The responsibility of medical professionals, primarily doctors and medical directors, in proper operation of addiction treatment facilities.

- Specific findings and opinions about how Compass Detox and WAR fell far short of these standards, including, based on an analysis of patient files and billing data, opinions on specific patients' treatment at Compass Detox and WAR. Dr. Waller's opinions will cover admissions and discharges, Dr. Santeiro's involvement in patient care, medications, UAs, re-admissions of patients, treatment plans, therapy, and other aspects of these patients' treatment.

### Dr. Waller's Expert Testimony Will Be Helpful to the Jury, And He Should Be Admitted As An Expert Without Any *Daubert* Hearing

The issues of what constitutes proper substance abuse treatment, particularly the importance of regular attendance at therapy sessions, common procedures and medical care given to such patients in addition to addiction treatment, and the proper types, frequency, use of, and medical justifications for UA testing are integral to the fraud alleged in the Indictment. And what constitutes proper substance abuse treatment, and the proper methods for providing it, are not

4

common knowledge. Dr. Waller will provide the jury with an outline of how substance abuse treatment is supposed to work. He will also provide indications of possible fraud in the documentation and billing he reviews. With his testimony as a road-map, combined with the Government's fact witnesses with first-hand knowledge of what actually went on at Compass Detox and WAR, the jury will have the proper context to determine whether the patients at these facilities received appropriate substance abuse treatment, and whether the private insurers in this case were defrauded when they paid for claims billed by Compass Detox and WAR. Dr. Waller will thus provide (a) a baseline understanding from which the jury can judge for themselves whether the defendants committed health care and wire fraud as charged in the Indictment, and (b) specific examples of such fraud for the jury to evaluate as well.

While the Government has made multiple detailed Expert Disclosures and has endeavored to make these disclosures as complete as possible, the Government respectfully requests leave to further supplement this disclosure to address discrete issues that may present themselves in preparing for trial when it meets with Dr. Waller to go over his testimony.

### Lay Witness Opinion Testimony[3]

In addition, the Government makes the following disclosures regarding lay opinion testimony from fact witnesses. It is the Government's position that none of the testimony the Government's fact witnesses who happen to be medical professionals will offer will go beyond the lay opinions allowed under Rule 701, and the case law applying it, because they will be testifying about their personal observations of various patients and their treatment, and putting

---

[3] The Government provides this information to comply with this Court's prior ruling that lay witnesses such as nurses and therapists may provide opinion testimony about whether treatment was inappropriate if such testimony is noticed as expert testimony. [D.E. 270, at 2].

what they saw in context with their professional experience. However, the Government intends to call several employees of Compass Detox and WAR's medical and clinical staff. These witnesses will testify to their own observations of patients, patient admissions, patient discharges/non-discharges, record keeping, facility conditions, and the quality and kinds of treatment provided by Compass Detox and WAR, including by Dr. Lieberman and Dr. Santeiro. The witnesses will be describing what they saw, heard, and experienced based on their own personal knowledge under Federal Rule of Evidence 602. Their basis for such testimony will be their own educational background, training, and employment experience, which will allow them to comment about the basic rules for addiction treatment centers.

The basic background of each witness, their employment experience and qualifications, and the details of what these witnesses will testify about have been (and will continue to be) provided in 302 interview reports provided to defense counsel in discovery.[4]

Rather than summarizing the 302 reports for each of these witnesses, in the interests of disclosure, the Government more specifically summarizes some aspects of these witnesses' testimony that defendants may argue go beyond lay witness opinion, and result in expert testimony. Based on their work experience and personal observations, the Government's medical and clinical staff witnesses will explain, among other things, that, at Compass Detox and WAR:

- Patients' admissions and discharges were determined by the need to maintain a high census and maximum occupancy, and these decisions were driven by non-clinicians rather than medical professionals.

---

[4] As the Government prepares for trial, it will supplement these lay witnesses 302s if these witnesses provide additional information that was not previously disclosed in a prior 302, or will disclose 302s for new witnesses. The Government will also provide more detailed curriculum vitae under separate cover for some of these witnesses.

- Patients were cycled and re-cycled between Compass Detox and WAR, and frequently stepped up from WAR to detox at Compass Detox, even when it was not medically necessary.

- Patients often stayed longer than necessary at Compass Detox and WAR to maximize billing, even when such additional stays were not medically necessary.

- Patient files were altered to justify the services billed.

- Patients received little to no appropriate medical oversight.

- Patients who were not in fact withdrawing from alcohol or benzodiazepines were admitted for alcohol or benzodiazepine detox that they did not need, because these substances paid out better by insurance companies.

- Patients were overmedicated and were medicated even when it was not medically necessary to do so, often at the direction of non-clinicians who pressured medical staff. This was done, among other reasons, to keep patients at Compass Detox for longer and to incentivize them to continually return.

- Excessive and medically unnecessary urinalysis tests were ordered and the results were not reviewed with patients in a timely manner.

- Patients were admitted to detox who did not belong, and patients often did not get medically appropriate addiction treatment or therapy.

- Patients were insufficiently managed and disciplined at Compass Detox and WAR, which created an environment that undermined, rather than helped, their and other patients' recovery.

### Disclosure Of Other Lay Witness Testimony

In addition to Dr. Waller and medical/clinical staff testimony, the Government reiterates its prior notice that it may call the following individuals as witnesses to discuss patterns and trends in patient treatment records, billing records, and financial records. The Government may also call witnesses from the private insurers that paid claims to Compass Detox and WAR.

These witnesses will not be rendering expert opinions, nor medical opinions. Instead, they will testify about patterns and trends, and explain summary exhibits, regarding otherwise

voluminous information contained in the patient treatment records, billing data, and financial records. In other instances, they will be explaining the policies of the companies they work for regarding payment of claims. Thus, they are not expert witnesses, but lay witnesses. However, in an abundance of caution, and in the interests of full disclosure, the Government provides notice of the following witnesses, and the basic subjects of their testimony. Such testimony constitutes lay witness testimony pursuant to Federal Rules of Evidence 601, 602, and 701, and does not constitute expert testimony under Rule 702. Nevertheless, the Government hereby notifies defense counsel of such evidence in case portions of the testimony are objected to as or are later deemed to be within the scope of Federal Rule of Evidence 702.[5]

**Missy Parks, CFE, AHFI**: Missy Parks is a Certified Fraud Examiner (CFE) and a member of the Association of Certified Fraud Examiners, as well as an Accredited Health Care Fraud Examiner. She is currently a Principal at Myers and Stauffer LC, and has over two decades of experience in health-care related consulting, including consulting on health care fraud investigations. She has previously testified in health care fraud trials, including in the trial against the Markoviches. Ms. Parks, and others working under her direction, have analyzed a sample of approximately 10-15% of patients' files for Compass Detox and WAR, as well as related billing records. Her testimony is not cumulative of the Government's medical expert; rather, she has quantified certain trends in the billing data or patient files, which will assist the jury in putting the expert and other witnesses' testimony in perspective.

---

[5] This disclosure is not intended to exhaustively set forth these witnesses' testimony or the topics of their testimony.

The Government anticipates that Ms. Parks, or another consultant to be designated by the Government, will testify concerning the following trends, among others:

- Attendance rates for therapy sessions at Compass Detox and WAR; instances where patient files reflect that patients attended therapy, but the underlying therapy notes indicate that the patient was not paying attention and did not participate; instances where the patient files reflect that insurance was billed for a greater amount of therapy than a patient actually received on a given day or week.

- The use of the "Comfort Drink" at Compass Detox based on patient files.

- The recycling of patients to and between Compass Detox and WAR.

- The ordering, billing, and reviewing of UAs at Compass Detox and WAR, and associated laboratories.

- The ordering and billing of chiropractor services at Compass Detox and WAR, and associated providers.

- The ordering and administration of medications at Compass Detox and WAR, including controlled substances, prescription medications, and over-the-counter medications.

- The prescribing practices of Dr. Santeiro and Dr. Lieberman with respect to buprenorphine and other controlled substances.

In addition, Ms. Parks will also testify concerning the total amounts billed to and paid by private insurers for addiction treatment services, UAs, and chiropractic services from Compass Detox and WAR which are at issue in this case. Ms. Parks may also create and testify about various summary exhibits. Finally, Ms. Parks will discuss the substantive health care fraud counts (i.e., the underlying data, how these claims are identified and what they contain), including confirming claims information (i.e., the date of claim, revenue code, and the amounts billed and paid for each claim).

**Jennifer Mila, CPA**: The Government expects that Jennifer Mila, who is a CPA and employed as a forensic accountant by the FBI, or another witness designated by the Government,

will testify concerning financial transactions involved in this case. Ms. Mila testified in the trial against the Markoviches. Ms. Mila's testimony will summarize the flow of money in this case, including from insurance companies to Compass Detox and WAR's accounts, and then to various personal and corporate accounts identified in the Indictment. This testimony will also cover the specific transactions alleged in the Indictment as money laundering substantive counts (Counts 25-33), and associated records (such as financial and corporate records for the companies involved).

Ms. Mila will also testify: to the economic details of the transactions identified as overt acts in Count 10, and kickback counts in Counts 11-23 (including the underlying financial and flight records identifying the purchases); other examples of similar payments and flights; and the total amounts of payments to patients and recruiters in the form of money and flights.

**Private Insurance Witnesses**: The Government will call one or more representatives of private insurance plans to testify concerning the coverage of substance abuse treatment, the process for submitting and adjudicating claims, contracts, billing and reimbursement policies, and the circumstances under which claims for substance abuse treatment are and are not covered. These witnesses may also authenticate and discuss billing records, enrollment information pertaining to Compass Detox, WAR, and other providers at issue in this case, and policies and manuals applicable to the coverage of substance abuse treatment. In particular, the Government anticipates the testimony of these witnesses to cover some or all of the following general information about the coverage of substance abuse treatment:

- Private insurance plans provide insurance coverage to individuals or their children seeking behavioral health treatment, including substance abuse treatment. Children of covered members can also be covered under their parents' policy, including for substance abuse treatment.

- Private insurance plans have copays, deductibles, and other payments and fees associated with plans that cover substance abuse treatment and the patient or policyholder is responsible for those payments.

- Providers can be either in-network or out-of-network. In-network providers typically have a contract rate for various types of treatment that is reflected in a fee schedule. Out-of-network providers do not have a contracted rate and, as a result, they can obtain higher compensation than an in-network provider. Providers often undergo a credentialing process whereby the insurance company examines the provider's licensures and other aspects of their operations.

- Providers that submit claims to private insurance companies must provide information about the member's name, identification number, address, billing or revenue codes, diagnosis information, charges, and the provider's information. Claims submitted by providers are typically automatically adjudicated and processed by the insurance company.

- Private insurers rely on the truthfulness of the information contained on each claim when processing the claim, including that the services claimed were actually rendered, medically necessary, and rendered appropriately.

- There are various forms of substance abuse treatment, including detoxification, residential treatment, partial hospitalization, intensive outpatient, and outpatient. The insurance company representative(s) will explain the meaning of these different levels of care and their minimum requirements (or their equivalents) as pertains to each insurer. They will also explain the revenue codes associated with these levels of care.

- Many services are billed at a per diem rate, meaning that multiple therapy sessions or services, including (depending on the level of care) room and board, are bundled into a single claim.

- Claims are typically submitted by wire communications that cross state lines.

- The private insurance companies do not cover claims for substance abuse treatment where the patient received kickbacks to attend treatment at the particular provider, both because kickbacks are unlawful and because patients should go to a provider for medical services received not for improper incentives. Examples of improper incentives include payments of money, airplane tickets, scholarships, massages, manicures, payments or waiver of copays, and other cash or non-cash inducements. If the insurance companies knew about the payment of such incentives to a patient, they would not pay those claims.

- Private insurers reimburse for urine drug testing. Point of care testing is often tested on site and is a relatively inexpensive test, typically done upon admission to determine what if any substance the member is positive for and then again when there are any suspicions that the member is using. The testing is done to further the patient's treatment and the results should be used in the patient's treatment. Confirmatory testing is more expensive and typically sent to a laboratory to identify how much of a substance is present. Typically, confirmatory testing is not medically necessary multiple times a week.

- Private insurers maintain reimbursement policies related to urine drug testing. Providers are often required to notify insurers when patients undergoing addiction treatment fail urine drug tests.

- Insurance provider representatives may testify to any atypical billing patterns associated with Compass Detox, WAR, or related providers, including that many members came from out of state and that many members were readmitted to Compass Detox and WAR, sometimes multiple times.

- Private insurers may request information from providers regarding claims submitted, such as patient files and medical records related to the service purportedly performed, and private insurers typically require providers to maintain such records.

- Private insurers, or entities with which they contract, publish manuals and guidance outlining criteria for medical necessity for different levels of substance abuse care.

**Department of Children and Families (DCF)**: The Government may present witnesses from the state agency in Florida tasked with administering addiction treatment facilities, to explain the Policy and Procedures Manuals and licensures necessary to operate addiction treatment facilities such as Compass Detox and WAR, and these facilities' own Manuals and interactions with DCF or any other state agency.

WHEREFORE the Government notices its expert witness, provides information about its law witnesses in the interests of full disclosure, and respectfully requests that Dr. Waller be admitted as an expert witness, without the need for any formal *Daubert* hearing.

Dated: January 31, 2022

Respectfully submitted,

JUAN ANTONIO GONZALEZ
UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

JOSEPH S. BEEMSTERBOER
ACTING CHIEF, FRAUD SECTION
CRIMINAL DIVISION
DEPARTMENT OF JUSTICE

By: /s/ *Jamie de Boer*
JAMES V. HAYES (FL Bar # A5501717)
Senior Litigation Counsel
JAMIE DE BOER (FL Bar #A5502601)
Trial Attorney
United States Department of Justice
Criminal Division, Fraud Section
1400 New York Avenue, N.W.
Washington, D.C. 20005
Telephone: (202) 774-4276 (Hayes)
Telephone:  (202) 304-6801 (de Boer)
James.Hayes@usdoj.gov
Jamie.DeBoer@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 31, 2022, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.

/s/ *Jamie de Boer*